cases where a panel has done just that, ordered specific relief, but then has remanaged the district court, and the district court has found alternate grounds to implement that same relief. That was precisely what happened in the Cook case, where the panel said we vacate the judgment in favor of the plaintiff, but when the case went back, the district court said, I can't reinstate it on other grounds. That came back to the Tenth Circuit and they said, no, you can reinstate it on other grounds, that's fine. Similarly, that happened in the Dish case. In that case, the court said- Well, I mean, it gets down to the meaning of the mandate and the breadth of the mandate, and when we read, we read more than just the last line of the opinion. Not that that is not important, but you have to read the last line in context with the rest of the opinion. I entirely agree, Judge Briscoe, and that's why I think the language of the opinion here is so important. What we can see in the language is that the panel clearly- Well, of whatever stripe, I mean, that's very broad language. I, again, that is an emphatic direction to do a certain thing to strike the damages, but it's based exclusively on the court's interpretation of 8.2. When you read the opinion, the court does an exhaustive review of what the language is and considers all of the arguments that relate to the interpretation of the provision, the party's intent, the syntax, the plain language, the purpose of the agreement, all of those things, but solid effects had raised alternate grounds for affirmance, which was based on an exception that applies only after the court would have reached that conclusion that it did bar loss profits. Well, if there's an alternative ground and the bottom line is you can't have lost profits, isn't that implicit that the additional arguments that you're making now are covered? No, absolutely not, Your Honor, and that's where I was going initially is the panel didn't need to consider this alternate grounds for affirmance. In fact, the rule is generally that the Court of Appeals won't pass on issues that haven't previously been ruled on by the district court, and in fact, this court has even said affirming on legal grounds not considered by the trial court is disfavored, and here, once the court had reversed the district court's interpretation of 8.2, it simply didn't have any district court ruling on the issue to apply. In addition, the district court had never even considered the impact of the jury's fraud verdicts on the willful and wanton exception. The jury never should have been instructed on fraud. Would you agree with that? No, I disagree with that, and let me tell you why. And if you go to the court's post-trial orders, he actually explains this in some detail. The reason is because the nature of the facts here, there were several permutations of what the jury could have done. So for example, if the jury had decided— Well, what the jury couldn't do was entertain both a contract claim and a fraud claim based on the contract duty. Would you agree with that? Based on the contract duty, but I think that there was a question as to what the contract duty was. And so the court's rationale was, look, the jury could decide the contract didn't govern this relationship and the basis for the fraud claims. And if they had decided that, then they could have been free to seek—were free to seek relief on the fraud claims. So because of the particular mix of facts here, I think the court had to submit— No, not in this case, Your Honor, and it's just because of the facts that were presented. And again, I would direct you to the court's post-trial order, where he walks through and explains what rulings the jury could potentially reach on the breach of contract that would have left them then free to say there's—the duties at issue aren't governed by the contract, and instead they could have found fraud. Again, that didn't happen, and eventually the court— If the prior panel thought there was any chance that the lost profits could have been could be resurrected, wouldn't the prior panel have to have considered the alternate ground for affirmance that all of the damages that were put on before the jury were wholly speculative? No, Your Honor, I disagree with that. We could have just ignored that argument, even though it was fully briefed to us, and let—what, have the district court decide it again? Yes, and in fact, I think that was actually the correct and judicially restrained thing to do, because once you reach the decision about the interpretation of 8.2, at that point, the remaining—the district court ruling that had not been appealed was that the provision was enforceable. And so there was no need to go any further, and the court was properly restrained, I think, in not reaching issues that hadn't been passed upon the district court at that point and leaving the remand to play out as it might. And Judge Brusco, to come back to your point about saying, well, certainly the panel said strike lost profits. That was the result of the opinion. But I want to point to the level of specificity required to— The panel also said lost profits are not recoverable. Right, and again, Your Honor, I just have to come back to the point of there was just no analysis of the court addressing the willful and wanton exception, which, again, is an entirely separate issue that depends primarily on the defendant's conduct. When you look to the Colorado cases that analyze this issue, there's always been a determination that there is a valid and enforceable damages limitation present. And that's exactly what the court concluded in its opinion. But then it goes—the courts go on to address the second issue to say, well, what was the defendant's conduct, and is it a violation of public policy to enforce the provision in this context? And there's just—you know, there's no evidence that the panel considered that issue. They didn't mention the words alternate grounds for affirmance. They didn't mention the words willful and wanton. But we did mention RINO fund. That's true, but quoted only for the proposition that limitations of liability are generally enforceable. And then talked about the fact that there was nothing unconscionable here, cited a case saying it's not a violation of public policy to hold people to the benefit of their bargain, that there were damages available, but in this case, there was a strategic decision made not to seek those damages. You don't think that's pretty obvious that the panel was saying we are enforcing this provision, strike all lost profit damages, and go about your lives? Your Honor, without even a mention of the words willful and wanton or any discussion at all of the defendant's conduct, I don't know how you can conclude that the panel reached that issue. And again, I just don't think it needed to, because at that point, the district court's order was still in force and was no longer addressing the situation that had been altered by the Tenth Circuit. And let me—I want to point specifically or talk about your issue with RINO fund, because Jefferson says, well, you concluded that there were some damages available. But that doesn't have anything to do with the willful and wanton exception, because all of the Colorado cases are clear. You don't have to have a complete bar on damages. Well, all of the Colorado cases are fraud cases, with the exception of one that deals with a public policy issue, and the Colorado Supreme Court has never extended this beyond contract. Now, we don't get to your underlying judgment at all. We're just looking at the 60B motion, right? Correct. But when you look at the opinion, can't you—isn't it implicit that we didn't buy your argument? I just don't think so, Your Honor, because there's no discussion of it. And again— Is it required that an appellate decision discuss every argument raised by the parties, whether or not it was the focus on appeal? Well, I think if it's going to—again, this was an alternate grounds for affirmance. You didn't have to reach it. And I think in that situation, where there's no discussion of it, the only way the district court could feel cabined by the opinion is to say that the issue was actually decided. And that's where the evidence of it being actually decided is missing. And I just want to talk about the level of specificity required to tell a district court it doesn't have room to maneuver on remand. And I would point you to United States v. SHIP. And in that case, the Tenth Circuit sent the case back— criminal case, true, but applying the same principles at issue here, no specific rules for criminal cases. And they said, sentence the defendant without the armed career classification, armed career criminal classification. That was the specific words of the remand. Well, they sent the case back, and the district court said, well, I see you've invalidated one of the bases for that, but there's another basis for it. So I'm going to re-sentence him with the armed career criminal classification. And the Tenth Circuit said, that was okay. In the world of re-sentencing in criminal cases, when we send a case back for re-sentencing, the door is open very broadly, because that is such a unique function of a trial court in a criminal case. So re-sentencing means go back and have the district court look at this entirely, broadly, anything anybody wants to talk about. And based upon what the court hears that day, the defendant is re-sentenced. That is not what we have here. Let me give you some civil examples, then. We have the Guidry case and the Copart case, where the district court said, for example, in Copart, your award of attorney's fees is reversed. You can't award attorney's fees. The court goes back to the district court, and the court awards attorney's fees on another basis. That's exactly what we're asking for here, is just for the court to consider our alternate grounds. And I want to come back to your point about Rhino Fund in the Colorado cases. This is a fraud case. The jury found fraud in this case. The jury didn't find willful and wanton conduct in this case. Well, I think that's a question that needs to be addressed, and nobody's addressed that yet. I think that would have been the type of issue that the Tenth Circuit would have discussed if it had addressed this issue. Let's focus on 60B-5. What's your grounds for 60B-5? So we cited two cases, Lowry and Warner, where... I'm talking about the rule. What are you hanging your hat on? This is where a judgment that the district court had relied on has later been reversed. It hasn't been. The district court ruled that the provision was unenforceable, and we agreed. We haven't reversed the district court. And the district court relied on two reasons in reaching that conclusion. One of them was, oh, well, you can get your direct lost profits. And the other was, this argument you're making is limited to cases involving public policy issues, and that's not involved here. Right. And so one of those reasons the court did reverse, which is that lost profits were available. We did not agree with the court on that. We did not reverse the court's ultimate conclusion that it was enforceable. So in fact, we ruled just the opposite. We agreed with the district court when it said, you should be held to the benefit of your bargain. We don't make a better contract for you than you made for yourself. We agreed with all of that. How is that a 60B-5 issue? Your Honor, I would just point you to the Lowry and Warner cases. They have facts very similar to these, where part of the district court's rationale was reversed on appeal, and then the district court was allowed to go back and consider that issue on a Rule 60B-5 motion. And Jeppesen has said nothing to distinguish those cases. I'd like to reserve the remainder of my time for rebuttal. Thank you. May it please the court, Michael Paisner representing Appellee Jeppesen Sanderson. I'm joined at counsel's table by William Lane with the Kirkland & Ellis Law Firm. This is the fourth time in this case, and the third time before this court, that solid effects has sought to advance the same arguments for nullifying the party's contractual damages limitation, section 8.2. All of those arguments were disposed of by this court in the prior appeal, including the willful and wanton argument. In that opinion, this court held that the limitation was enforceable, and that it must be enforced in this case to bar solid effects' recovery of lost profit damages. That ruling precluded the district court's reconsideration of solid effects' challenges to the enforceability of the limitation as the district court correctly held. But it is true the prior opinion does not specifically say, and we reject your willful and wanton exception to the Rhino-Frund general rule. It's correct that the prior opinion did not use the words willful or wanton. Of course, as Your Honor pointed out, there's no magic words requirement in the mandate rule. And Judge Briscoe, as you pointed out, you have to look at the whole opinion and not just the last sentence, not just the mandate itself. And here, when you look at this court's opinion in its totality, the interpretation that this the willful and wanton argument, at least implicitly, is not remotely plausible. So let's just look at the words that this court used. Well, let me, before you go there, as I understand your opposing counsel, it wasn't good enough to do it implicitly. It had to be done explicitly. Would you agree with that? And maybe I'm misunderstanding, and I'll learn differently on rebuttal. Judge McHugh, the case law interpreting the mandate rule is clear that the argument can either be addressed explicitly by the court or it can be addressed by necessary implication. And certainly, where rejection of an argument was necessary to the court's ultimate conclusion, that would be addressing it by necessary implication. And here, it was necessary to the court's conclusion. And I would point to a few things. First, the language that this court used, that it must enforce the damages limitation, that solid effects is contractually precluded from recovering lost profit damages of any All of those words are necessarily specific to this case, not speaking to the general enforceability of the limitation in the abstract. They're all specific to this case. And those commands, which, of course, form part of this court's mandate, are fundamentally inconsistent with all of the arguments that solid effects made challenging the enforceability of the damages limitation, including the willful and wanton argument. And Your Honor, as you pointed out, solid effects made two related arguments for the non-enforceability of the damages limitation, section 8.2. First, they argued that the limitation could not be enforced to bar lost profit damages because that would leave them without a remedy. And this court directly rejected that argument. It held that solid effects could still pursue its reliance damages, and that in any event, parties are free under Colorado law to agree to limitations that severely, if not completely, restrict the right to recovery for breach of contract. Solid effects also made the conditional argument that if this court held that the limitation barred direct lost profit damages, then it should decline to enforce the limitation because of Jepson's purportedly willful and wanton conduct. And in the face of that argument, and in the face of all of the rest of their challenges to enforceability, this court held that it must enforce the limitation, and that contractually precluded from recovering lost profit damages, and vacated and reversed the award. Further, agreeing with their position would require reinstating the very lost profit damages award that this court reversed and vacated. And significantly, conspicuously absent from this court's opinion is any suggestion that open issues remain, or any reference to further substantive proceedings on remand. And if I could just point to actually another, a couple of, yeah. I think what the argument is that although we said vacate these damages, that we left open the possibility that they could prove that the action was willful and wanton, I guess in a new trial, because the jury was never asked that, and that then a new award of damages could be imposed. And that's exactly the point, Your Honor, that reinstituting another award of damages would be directly contradicting this court's mandate, which said that the limitation must be enforced, and that the lost profits award must be reversed and vacated. And that's what differentiates this case from all the cases that they've cited. The Cook decision, as this court made clear in Cook, there was an alternative verdict that would support the judgment in that case, an error-free verdict. In this situation, there is no way that you could reinstitute the lost profit damages award without directly transgressing this court's mandate. And similarly, in the Dish case, there was specific language in the court's opinion that directed the district court to consider additional issues on remand. Obviously there's nothing like that here. We don't have the magic word remand in the mandate. That's right, Your Honor. Is that key? Well, Your Honor, there is a separate judgment that was entered that refers to remanding to the district court for further proceedings consistent with the opinion, but not in the opinion. I saw that. I saw that. And that's an interesting thing. I suppose we should gather as a group, the court, to talk about the difference between the opinion issued by the panel and what the clerk's office ultimately does. Well, it's a good point, Your Honor. There's nothing in the opinion itself that refers to a remand. And certainly the only plausible way to interpret that language in the judgment is that it was directing the district court to, as a ministerial matter, enter the required rulings in order to carry into effect. Clean up the paperwork, basically. Exactly. Clean up the paperwork. To do the paperwork, Your Honor. Just a couple of points, just additional aspects of this opinion that show how implausible their interpretation is. First, this court, in articulating the general rule that limitation of liability clauses between sophisticated business entities are enforceable, noted that the rule applies even where the breach is deliberate. So Judge McHugh, even though this court didn't use those words, willful and wanton, that formulation encompasses it. And then, Your Honor, as you noted, this court identified two of Jepson's arguments it was not addressing because they had been rendered moot by the ruling on the limitation, the speculative nature of the damages, and the non-admissibility of their expert and lay damages testimony. Surely if this court had intended further proceedings on the willful and wanton argument, it would have addressed those properly presented predicate arguments. And certainly by explicitly identifying the arguments it was not addressing, this court strongly indicated that it had disposed of the rest, including the willful and wanton argument. So the entire thrust of this court's prior opinion was inconsistent with the notion that they can continue to pursue this argument below. If I could now, unless there are further questions on Solid FX's appeal, I'll turn to Jepson's cross appeal. In the case below, Solid FX asserted claims for fraudulent misrepresentation and fraudulent concealment against Jepson based on the same underlying conduct that served as the basis for their breach of contract claims. And do you agree with your opposing counsel that it was required in this case to submit both claims to the jury before you knew whether you had a problem with the economic loss rule? Absolutely not, Your Honor. We sought summary judgment on the economic loss rule. We sought a ruling as a matter of law at the close of evidence on the economic loss rule. We made those arguments because we believe that the economic loss rule applied and barred the fraud claims and that that was clear from the way that they had pled their case and the underlying facts of the case. Under the economic loss rule, of course, you cannot seek recovery for essentially breach of contract damages absent an independent legal duty that sounds in tort. And they did not have such an independent legal duty. All of their claims depended on the same conduct that served as the basis for the breach of contract claim. And so we saw judgment as a matter of law after the verdict was entered. And the district court seemingly granted the relief we had requested. It ruled that the economic loss rule applied and that it, quote, bars Solid FX's fraud, quote, claims. Or so it appeared to us. Well, the order that was entered at that time talks about plaintiff cannot recover additional monetary damages on the fraud claim. Does that matter? Well, Your Honor, there were references to damages in the order. Also, the order said that the economic loss rule bars the claims. And, of course, no one, well, Solid FX continues to dispute, the district court did not dispute that the economic loss rule properly applied requires vacatur of the liability findings in addition to the damages award. That is black letter, Colorado law, town of Alma, all the other cases that we cite in our brief. And here's what the district court held. It held that tort claims cannot survive application of the economic loss rule absent an independent duty sounding in tort, that Solid FX had failed to establish the existence of such a duty, and that, therefore, the fraud claims were barred. By any objective measure, that granted us the relief that we were seeking, and we were entitled to rely on that conclusion. So, you're thinking when you saw the judgment that said no damages would be allowed, that you were also not liable? Your Honor, absolutely, because that's the straightforward application of the economic loss rule. That's even what Solid FX thought. In their docketing statement filed in this court, they referred to vacatur of the fraud verdicts. And, by the way, Your Honor, it wouldn't make any sense to vacate a nominal damages award, the $1 awarded on the fraudulent concealment claim, but not the underlying liability. Why would a court do that? And certainly, we were not obliged to strain to read the district court's rulings as misapplying the law in this illogical way, yet that would be the import of denying our Rule 59e motion to correct the judgment. But you do have to meet an abuse of discretion standard on the finding that your motion was untimely, correct? Well, Your Honor, we would say there's an argument for de novo, because this is really just a straightforward application of the economic loss rule. But regardless of de novo or abuse of discretion, we prevail. It's a clear abuse of discretion for the district court to have grossly misapplied the law in this way. And certainly, nothing in these rulings was sufficiently clear that it would have put us on notice. By the way, Your Honor, we acted diligently. We sought a ruling on fraudulent misrepresentation and fraudulent concealment. The district court first gave us relief on the fraudulent misrepresentation. We then had to go back on the fraudulent concealment. And Your Honor, just as a matter of judicial economy, this court does not want to encourage litigants. Already, there were, I think, five separate motions on these fraud claims. Don't want to create incentives for litigants to have to keep on going back and reiterating hyper-technical potential objections to rulings. We acted diligently here, and we are entitled to the relief under the economic loss rule of vacatur of these fraud claims. I'll reserve my last 30 seconds for rebuttal on the cross-appeal. Thank you, Your Honors. Thank you very much. Thank you. Thank you, Your Honor. You know, I would just observe that when Solid Effects filed its petition for rehearing, it said, we don't think the court addressed this willful and wanton issue. And Jeppesen's response wasn't, no, of course the court addressed the issue. It was, the court doesn't need to address the issue because it's underdeveloped. So even Jeppesen didn't understand the court's opinion to have resolved the willful and wanton issue. And I want to address your question, Judge McHugh, about the implicit resolution. And that has a specific meaning in the mandate context. And what it means is that if the district court were to do what we asked, it would abrogate your prior opinion. And that's just not the case, because what the district court would be saying if it ruled our way is to say, we find that there was willful and wanton conduct, and it violates Colorado public policy. Therefore, in this particular instance, this limitation of liability isn't enforceable. And that doesn't violate anything about what the panel ruled previously, which is, as a general matter, this type of provision is enforceable and does bar all damages. And the district court would be saying, only in this unique and specific circumstance where there's this type of conduct is it rendered unenforceable. And again, that's just a pattern of decision making that the Colorado courts have engaged in many times. And the fact that the court pointed to that these were two sophisticated parties is irrelevant to the willful and wanton exception, because many of those cases in Colorado are between sophisticated parties. That's true for Rhino Fund and Cormark and the Taylor Morrison case. And it also wouldn't have any impact on the court's point that damages were still available, because in many of the willful and wanton Colorado cases, damages are still available. These are not complete bars on liability. So for example, in Taylor Morrison, the limitation of liability limited the opposing party to $550,000 of damages. Obviously that was not a complete bar. And even in Rhino Fund, the limitation there only applied to employees of the defendant. It wasn't a complete bar on recovery. It was just specific to the employees of the defendant, not even the defendant itself. And then I would just say I'm not aware of any Tenth Circuit case where an issue has gone unmentioned in a panel opinion, but that has then been deemed to be a basis to preclude the court from reaching that issue on remand. And all of the cases where, even where parties are asking to reinstate the exact same relief, unless there has been something that specifically prohibits it or that issue has already been specifically decided, this court has allowed those that actually go forward. Well, the irony of all of this is that often we are told that we are to narrow our rulings and narrow our judgments and only reach the issues we're supposed to reach and don't talk about everything else. So what you would ask us to do is rule on the issue that's squarely in front of us and then say, oh, by the way, and these also are improper or losing arguments, and then proceed to address them. I mean, that's really what you're asking. Well, I think this case is, and I see my time has expired, I think this case is unique in that this was an alternate grounds for affirmance that did not have a district court ruling to review at that point. So I think that does make it different than a typical issue that would be raised for review. And then I'd also point out what we're seeking here is Rule 60B relief, which is really a quite narrow shot, but we think the district court should be permitted to evaluate that. Thank you. I'll waive my rebuttal time, thank you very much. We appreciate that. Give everyone their time back. Thank you. Thank you. Thank you both for your arguments this morning. The case is submitted.